UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>v. )<br>)<br>BRANNY TAVERAS )<br>)<br>Defendant. )<br>) | Criminal No. 4:19-cr-40049-MRG-5 |

## MEMORANDUM AND ORDER

**GUZMAN, J.**

### Introduction

Defendant Branny Taveras ("Mr. Taveras") moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). [ECF No. 985]. Mr. Taveras asserts that his family circumstances constitute "extraordinary and compelling reasons" warranting his compassionate release under the statute. For the reasons stated below, Mr. Taveras' motion is DENIED.

### Procedural History

On March 11, 2022, Mr. Taveras pleaded guilty to Conspiracy to Distribute and to Possess with Intent to Distribute One Kilogram or More of Heroin, 400 Grams or More of Fentanyl, 280 Grams or More of Cocaine Base, and 500 Grams or More of Cocaine, in violation of 21 U.S.C. § 846; 21 U.S.C. §§ 841(b)(1)(A)(i), (b)(1)(A)(iii), (b)(1)(A)(vi), and (b)(1)(B)(ii). Based upon a total offense level of 25 and a criminal history category of I, the guideline imprisonment range was 57 to 71 months. Presentence Investigation Report ("PSR") at 17. On October 26, 2022, this Court

sentenced Mr. Taveras to 40 months in prison to be followed by 24 months of supervised release. [ECF No. 763].

In his motion for compassionate release ("the Motion"), Mr. Taveras alleges that his projected release date is April 2024, which he calculated by factoring in yet-unearned Good Time Credits. [Def. Mot. at 5, ECF No. 985]. As a preliminary matter, Mr. Taveras' calculation of his anticipated release date is incorrect. According to the Bureau of Prisons ("BOP"), Mr. Taveras has a First Step Act ("FSA") release date of January 29, 2025, and an FSA conditional release date of September 01, 2024. [Email from Public Information Officer at FMC Devens to the Court (Dec. 10, 2023, 10:04 EST (on file with the Court)]. Mr. Taveras has served 17 months of his 40-month term; as such, his motion for compassionate release would reduce his sentence of incarceration by 58%. [See ECF No. 763]. Before filing the Motion, Mr. Taveras filed a petition for compassionate release to the BOP, and the BOP denied the petition on October 24, 2023. [See ECF No. 985-1 Ex. B].

## Factual Background

In the Motion, Mr. Taveras cites family circumstances as constituting the "extraordinary and compelling reasons" required for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Specifically, Mr. Taveras alleges that his fifty-nine-year-old mother, Mercedes Cabrera, suffers from a series of debilitating ailments, including, limited mobility attributable to a major motor vehicle accident; a history of ovarian cancer, breast cancer, depression, heart murmurs; and a neurological complication associated with memory loss and reduced awareness. [Def. Mot. at 3]. Mr. Taveras further alleges that Ms. Cabrera, who lives alone in subsidized housing in Clinton, MA, requires full-time, in-home assistance, as she struggles to prepare meals, to attend doctor appointments, and to remember to take her medication. [Id. at 3-4].

According to Mr. Taveras, Ms. Cabrera's two other children currently live outside of Massachusetts, and Ms. Cabrera has had no available caretaker since a friend of hers, who assisted her with daily tasks, moved to a different state. [Id.] If the Court were to grant compassionate release, Mr. Taveras intends to live within a twenty-minute commute from Ms. Cabrera's residence and to visit Ms. Cabrera daily to care for her. [Id. at 4]. In addition to providing Ms. Cabrera with assistance in meal preparation, transportation to medical appointments, and medication pickups, Mr. Taveras attests that upon release he would have access to employment from a construction company that would allow him to provide financial assistance to Ms. Cabrera. [Id.] As evidence for his claims, Mr. Taveras included his mother's medical records as well as letters from his wife and his siblings affirming that they live out of state and cannot be caretakers for their mother. [ECF No. 985-1 at 11-40].

Upon review of the Motion, this Court directed an Officer from U.S. Probation and Pretrial Services to investigate Ms. Cabrera's circumstances. The Officer delivered the investigation report to the Court on February 23, 2024. [ECF No. 1039]. In the investigation report, the Officer detailed her observations during an unannounced visit of Ms. Cabrera's home on February 7, 2024. Upon the Officer's arrival, Ms. Cabrera answered the front door and escorted the Officer around the one-bedroom apartment. [Id.] The Officer inquired into Ms. Cabrera's medical issues, and Ms. Cabrera confirmed that she was involved in a motor vehicle accident in 2021, from which she sustained injuries and prolonged medical issues, including back pain due to the surgical installation of a metal plate into her spine. [Id.] Ms. Cabrera reported that bending over causes her pain, and that she has only one fully functional arm. [Id.] Lastly, Ms. Cabrera reported that she received cataract surgery on her eye on January 29, 2024, which causes her to experience dizziness and eye sensitivity to the sun. [Id.]

In describing the assistance to which she has access, Ms. Cabrera informed the Officer that she receives substantial assistance through her health insurance, including daily visits on weekdays by an individual who helps Ms. Cabrera with groceries, laundry, and cleaning for two (2) to three (3) hours a day. [Id.] If Ms. Cabrera has difficulty getting dressed, she reported that she would ask a neighbor for assistance or wear clothing that she could easily put on herself. [Id.] Ms. Cabrera further reported that her insurance provides for a nurse to visit her every morning and every evening seven (7) days a week to monitor her medicine intake and verify that she is taking her medication correctly. [Id.] Additionally, Ms. Cabrera reported that her insurance pays for her transportation to and from her medical appointments. [Id.]

## Legal Standard

The enactment of the FSA in 2018 amended 18 U.S.C. § 3582(c)(1)(A)(i) so that courts may consider motions for compassionate release filed by defendants without requiring a motion by the Director of BOP, provided that the defendant has exhausted their administrative remedies with the BOP by requesting the Director to bring such a motion and the Director refuses or fails to do so. United States v. Beck, 425 F. Supp. 3d 573, 578 (M.D.N.C. 2019); 18 U.S.C. § 3582(c)(1)(A). The FSA allows a court to reduce a defendant's term of imprisonment when the court finds that extraordinary and compelling reasons warrant such a reduction, and the court subsequently finds the reduction to be compatible with the factors enumerated in 18 U.S.C. § 3553(a) to the extent that they are applicable. 18 U.S.C. § 3582(c)(1)(A)(i). Although "Congress has not specified the circumstances that qualify as 'extraordinary and compelling reasons'" under the statute, the statute states that any sentence reduction under it must be "consistent with applicable policy statements issued by the [United States] Sentencing Commission." Id.; United States v. Bucci, 409 F. Supp. 3d 1, 1 (D. Mass. 2019) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).

However, while "the Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, [] it is not ultimately conclusive." Bucci, 409 F. Supp. 3d at 2 (quoting United States v. Fox, No. 2:14-CR-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019)).

Before the passage of the FSA, the Sentencing Commission had defined four circumstances in which "extraordinary and compelling reasons" related to family circumstances could support a sentence reduction.[1] U.S.S.G. § 1B1.13(b)(3). Here, two of those provisions are relevant. First, extraordinary and compelling reasons may be found upon the *incapacitation* of the defendant's parent when the defendant would be the *only available caregiver* for the parent. Id. § (b)(3)(C) (emphasis added). Second, extraordinary and compelling reasons may be found if the defendant can establish that circumstances similar to death or incapacitation are affecting an immediate family member, or another individual with a similar relationship to the defendant as an immediate family member, *and* the defendant would be the *only available caregiver* for that person. Id. § (b)(3)(D) (emphasis added). "Even when [defendant's] circumstances fall within the guidelines, a grant of compassionate release is a rare event." United States v. Ramirez, 459 F. Supp. 3d 333, 337 (D. Mass. 2020) (citation and internal quotation marks omitted).

---

[1] The four circumstances are: (1) "[t]he death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition;" (2) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner," (3) [t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent; and (4) "[t]he defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual." U.S.S.G. § 1B1.13(b)(3).

**Discussion**

I. **Mr. Taveras Has Exhausted Administrative Remedies, so the Court Can Proceed to the Merits of His Motion.**

As previously stated, before filing the Motion, Mr. Taveras filed a petition for compassionate release to BOP, and the BOP denied the petition on October 24, 2023. *See* [ECF No. 985 Ex. B]. Thus, Mr. Taveras has "fully exhausted all administrative rights to appeal a failure of [BOP] to bring a motion on [his] behalf" pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), and the Court can proceed to rule on the merits on Mr. Taveras' motion for compassionate release.

II. **While the Court Agrees that Mr. Taveras' Mother Suffers from Serious Medical Conditions, Her Medical Conditions Do Not Render Her "Incapacitated" Under U.S.S.G. § 1B1.13.**

A. *Guardianship law provides the most appropriate definition for "incapacitation" under U.S.S.G. § 1B1.13.*

The Sentencing Commission does not define "incapacitation" in the context of compassionate release. See U.S.S.G. § 1B1.13. As a result, courts around the country have looked to various sources to define the term. Many courts have looked to the BOP's non-binding Program Statement for guidance on processing compassionate release requests. United States v. White, No. CR 16-40, 2021 WL 1721016, at *4 (E.D. La. Apr. 30, 2021) (citing Federal Bureau of Prisons, Program Statement § 5050.50, https://www.bop.gov/policy/progstat/5050_050_EN.pdf, at 10; United States v. Bolden, No. 16-320, 2020 WL 4286820, at *4 (W.D. Wash. July 27, 2020) (looking to the BOP's relevant Program Statement for guidance); United States v. Doolittle, No. 19-501, 2020 WL 4188160, at *2 (D.N.J. July 21, 2020) (same); United States v. Collins, No. 15-10188,

6

2020 WL 136859, at *4 n.13 (D. Kan. Jan. 13, 2020) (noting that although the Program Statement is specifically meant for use by BOP, it "provide[s] guidance for courts as well")). However, the Court finds that solely relying on BOP's definition of "incapacitation" is inappropriate given the legislative intent of the amendments to compassionate release enacted with the FSA. The amendments reduce BOP's role in evaluating motions for compassionate release as BOP rarely granted such motions. See United States v. Ramirez, 459 F. Supp. 3d 333, 336 n.1, 337 (D. Mass. 2020) ("The First Step Act did not change the statutory criteria for compassionate release, but it did change the procedures, so that the Bureau of Prisons is no longer an obstacle to a court's consideration of whether compassionate release is appropriate." (quoting Fox, 2019 WL 3046086, at *3)). The FSA was enacted to "further increase the use of compassionate release" and to provide courts with more oversight and discretion; for example, the law "explicitly allows courts to grant such motions even when [BOP] finds they are not appropriate." See Beck, 425 F. Supp. 3d at 579. As a result, the Court declines to rely on BOP policy statements to define "incapacitation."

"When state law is 'compatible with the purpose of [the federal statute at issue], [state law] may be resorted to in order to find the rule that will best effectuate the federal policy.'" Parmenter v. Prudential Ins. Co. of Am., 93 F.4th 13, 21 (1st Cir. 2024) (quoting Nash v. Trs. of Bos. Univ., 946 F.2d 960, 965 (1st Cir. 1991)) (looking to state law to guide interpretation of a term in contracts governing employee benefits plans). In his Motion, Mr. Taveras is essentially arguing that he should be released so he can become a caretaker or guardian for his mother. Therefore, the Court finds that the definition of "[i]ncapacitated person" applied in the guardianship context under state law is most appropriate for interpreting "incapacitation" of the defendant's parent under U.S.S.G. § 1B1.13(b)(3)(C). However, when state law supplies a definition for a term under federal law, the Court must carefully consider which version of state law should apply. See United States v. Crocco,

7

15 F.4th 20, 23 (1st Cir. 2021) (discussing the challenge of selecting which version of state law should supply the definition of "controlled substance" for predicate offenses under U.S.S.G. § 4B1.2(b)). The choice in this case is relatively straightforward due to the existence of the Uniform Probate Code ("UPC"). As the Massachusetts Supreme Judicial Court has remarked, "[t]he Uniform Probate Code is published by the Uniform Law Commission (also known as the National Conference of Commissioners on Uniform State Laws), a State-supported, national organization that proposes uniform codes for State legislatures to encourage uniformity and clarity in important areas of State law." Am. Family Life Assurance Co. of Columbus v. Parker, 178 N.E.3d 859, 863 n. 5 (Mass. 2022) (citing Uniform Law Commission, About Us, https://perma.cc/QRB6-A4Q9).[2] Eighteen states have adopted the UPC, at least in part, including Massachusetts. Id.

Under the UPC, a person is "incapacitated" when that individual, "for reasons other than being a minor, is unable to receive and evaluate information or make or communicate decisions to such an extent that the individual lacks the ability to meet essential requirements for physical health, safety, or self-care, even with appropriate technological assistance." Uniform Probate Code, Section 5-102(4) (1969, revised 2019). The definition of "incapacitation" under the UPC is a stringent standard in order to protect the rights of the subject of the guardianship proceedings. This interpretation of "incapacitation" creates a high bar for a finding that a defendant's parent is incapacitated under U.S.S.G. § 1B1.13(b)(3)(C). However, the interpretation based on the UPC is both compatible with the strict requirements for "extraordinary and compelling circumstances" required for compassionate release and effectuates the federal policy that "compassionate release

---

[2] The definition of "incapacitated person" under the Massachusetts Uniform Probate Code is essentially identical to that of the UPC. See Mass. Gen. Laws ch. 190B, § 5-101(9).

is an 'extraordinary' remedy." Ramirez, 459 F. Supp. 3d at 338 (citing 18 U.S.C. § 3582(c)(1)(A)(i))); See Parmenter, 93 F.4th at 21.

**_B. Ms. Cabrera's medical conditions do not qualify her as "incapacitated" under U.S.S.G. § 1B1.13._**

As previously discussed, due to the seriousness of Mr. Taveras' assertions about his mother's medical conditions, the Court directed an Officer from U.S. Probation and Pretrial Services to investigate Ms. Cabrera's circumstances. While the Court agrees that Ms. Cabrera's medical conditions are serious and, in some ways, debilitating, the Court concludes that she is not "incapacitated" under the standard articulated above. According to the aforementioned observations of the Probation Officer, Ms. Cabrera could walk freely throughout her apartment and communicated effectively. Additionally, Ms. Cabrera receives services through her health insurance that allow her to live a relatively independent life, with some assistance. These findings indicate that Ms. Cabrera is not "incapacitated" because she does not lack the ability "to receive and evaluate information or make or communicate decisions" such that she "lacks the ability to meet essential requirements for physical health, safety, or self-care, even with appropriate technological assistance." See UPC, Section 5-102(4); [ECF No. 1039]. While the Court is sympathetic to Ms. Cabrera's ailments, her circumstances do not rise to the level of an "extraordinary and compelling" reason. White, No. CR 16-40, 2021 WL 1721016 at *4 (denying compassionate released based on family circumstances where the defendant's mother suffered from cancer but was not "incapacitated" or "disabled" by the disease); see also United States v. Ingram, No. 2:14-CR-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019) (holding that "[m]any, if not all inmates, have aging and sick parents," and "[s]uch circumstance is not extraordinary.").

9

### III. Even if Ms. Cabrera's Medical Conditions Were to Render Her "Incapacitated," Mr. Taveras Is Not Her "Only Available Caretaker" under U.S.S.G. § 1B1.13.

The Probation Officer's report indicates that Ms. Cabrera has access to a substantial network of care provided by her health insurance. [See ECF No. 1039]. This network of care provides personnel to address each of Ms. Cabrera's medical needs that Mr. Taveras cites in the Motion, namely, assistance in meal preparation, transportation to medical appointments, and medication pickups. [Id.; Def. Mot.]. A provider visits or video calls Ms. Cabrera every evening to check on her and ensure that she takes her medication. [ECF No. 1039]. Additionally, Ms. Cabrera stated that she has neighbors that help her when needed. [Id.] A defendant's mere desire to care for a vulnerable family member does not qualify as an extraordinary and compelling family circumstance when the defendant is not the only available caretaker. United States v. Mackenzie, 458 F. Supp. 3d 53, 55 (D. Mass. 2020). Similarly, Ms. Cabrera's substantial network of care provided by her insurance precludes the Court from finding that Mr. Taveras is the "only available caretaker" for his mother pursuant to the policy statements of the Sentencing Commission. See U.S.S.G. § 1B1.13.

### IV. Mr. Taveras Has Presented No Other Circumstances to Warrant Compassionate Release.

As previously mentioned, the Sentencing Commission further provides a catchall provision that a court may grant a defendant's motion for compassionate release if "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in [the guidelines] are similar in gravity to those described in [the guidelines]." U.S.S.G. § 1B1.13(b)(5). As Mr. Taveras has not presented any other circumstances that the Court could find to be "extraordinary and compelling" pursuant to the

guidelines, the Court concludes that Mr. Taveras has failed to present the "extraordinary and compelling" circumstances required for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). See id.

## Conclusion

For the reasons set forth above, Mr. Taveras' motion for compassionate release, [ECF No. 985], is **DENIED**.[3]

**So Ordered.**

|  |  |
|---|---|
|  | /s/ Margaret R. Guzman |
|  | The Hon. Margaret R. Guzman |
| Dated: April 12, 2024 | United States District Judge |

---

[3] Since the Court finds that Mr. Taveras has failed to present "extraordinary and compelling circumstances" warranting compassionate release, the Court need not reach the issue of whether Mr. Taveras poses a danger to the community such that he is ineligible for compassionate release pursuant to § 1B1.13. For the same reason, the Court need not consider the sentencing factors set forth in [18 U.S.C. § 3553(a).

11